# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES | : | |
| | : | **CRIMINAL ACTION** |
| v. | : | |
| | : | No. 08-092 |
| STEVEN MUZYCHKA | : | |

**FILED**

JUN 2 6 2009

MICH_____ ___ __. Clerk
By_____ ____ Dep. Clerk

## MEMORANDUM

**Schiller, J.**                                                                June 26, 2009

On January 16, 2009, a jury convicted Defendant Steven Muzychka of offenses related to the manufacture and distribution of methamphetamine. Currently before the Court is Defendant's Post-trial Motion for Judgment of Acquittal and/or New Trial Pursuant to Federal Rules of Criminal Procedure 29 and 33. For the reasons discussed below, Defendant's motion is denied.

## I.     BACKGROUND

Defendant was convicted, inter alia, of conspiracy to manufacture and possess with intent to distribute methamphetamine, manufacturing methamphetamine, and possession with intent to distribute methamphetamine. The charges arose from an investigation precipitated by an explosion, on the night of February 16, 2003, at 437 Memphis Street ("the premises") in Philadelphia. The two-story building at that address contained a first-floor garage and either an office or apartment on the second floor. (Trial Tr. Jan. 12, 2009 at 35.) The second floor consisted primarily of a large main room, with a smaller room in one corner and a small bathroom in another corner. (*Id.* at 81.) When the fire department responded to the explosion, they found debris throughout this building and, on the second floor, among other things, buckets covered in cheesecloth and a large metal cooking pot containing liquid and shredded pieces of foil. (*Id.* at 36-39.) Believing that these items indicated

drug activity, the fire department contacted the police. (*Id.* at 39.) The premises in fact contained a functioning clandestine methamphetamine lab, as the parties stipulated at trial. (*Id.* at 89.)

When federal drug enforcement agents investigated the building, pursuant to a search warrant, they found methamphetamine, and the chemicals used to manufacture the drug at various stages of production. They also discovered items used in the production, including heating mantles, bottles of isopropyl alcohol, tongs, scales, boxes of aluminum foil, and three gas masks. (*Id.* at 91-92; Trial Tr. Jan. 13, 2009 at 59.) Numerous documents were seized, including utility bills, bank statements, Social Security statements, and receipts. (Trial Tr. Jan. 12, 2009 at 91-95.) A computer was discovered in close proximity to some of the drug paraphernalia. (*Id.* at 99.)

Many of the documents recovered bore Defendant's name. These included a bank statement, dated March 20, 2002; a Social Security statement, dated April 7, 2002; an interim driver's license, issued September 12, 2001; an OnStar enrollment form, printed on September 18, 2002; and a vehicle registration renewal form. (*Id.* at 95-97.) Two bottles of medication, prescribed to Defendant at a different address, and dated October 2002 and January 15, 2003, were also found. (*Id.* at 101.) A Sam's Club membership card with Defendant's photo was also discovered at the premises. (*Id.* at 106.) The hard drive of the computer was seized and subsequently analyzed by a computer forensic expert, who discovered that it contained approximately 1,600 emails sent by Defendant between March 18, 2002 and February 12, 2003, as well as hundreds of photographs of him. (Trial Tr. Jan. 14, 2009 at 22-25.)

At the close of the Government's case, Defendant moved for judgment of acquittal, pursuant to Federal Rule of Criminal Procedure 29, on the basis of insufficient evidence. (Trial Tr. Jan. 14, 2009, at 84.) The Court denied this motion. The jury subsequently convicted Defendant on seven

of the nine counts in the indictment.  Defendant filed a post-trial motion, again seeking acquittal, pursuant to Rule 29, on the grounds that "the evidence adduced at trial was legally insufficient for a reasonable jury to conclude that the Government had proven the Defendant's guilt beyond a reasonable doubt." (Def.'s Post-Trial Mot. for J. of Acquittal and/or New Trial ¶ 3.)  Defendant also sought a new trial, contending that the Court committed error in allowing expert testimony absent adequate pre-trial notice, prejudicing Defendant and violating his Sixth Amendment right to a fair trial.  (*Id.* ¶ 4.)  The motion has been fully briefed and is now ripe for disposition.

## II.    DEFENDANT'S RULE 29 MOTION FOR ACQUITTAL

### A.    Standard of Review

Under Rule 29, this court must "review the record in the light most favorable to the prosecution to determine whether any rational trier of fact could have found proof of guilt beyond a reasonable doubt based on the available evidence." *United States v. Wolfe*, 245 F.3d 257, 261 (3d Cir. 2001); *see also Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  All reasonable inferences are to be drawn in favor of the jury verdict. *United States v. Smith*, 294 F.3d 473, 476-77 (3d Cir. 2002) (citing *United States v. Anderskow*, 88 F.3d 245, 251 (3d Cir. 1996)).  "The evidence need not unequivocally point to the defendant's guilt as long as it permits the jury to find the defendant guilty beyond a reasonable doubt." *United States v. Pungitore*, 910 F.2d 1084, 1129 (3d Cir. 1990).

A court must "presume that the jury properly evaluated credibility of the witnesses, found the facts, and drew rational inferences." *United States v. Iafelice*, 978 F.2d 92, 94 (3d Cir. 1992). As such, a court reviewing for sufficiency of the evidence must "not weigh evidence or determine the credibility of witnesses." *United States v. Casper*, 956 F.2d 416, 421 (3d Cir. 1992). In sum,

the prosecution's failure must be clear for a court to find that the evidence at trial was insufficient to sustain a conviction. *Smith*, 294 F.3d at 477 (citing *United States v. Leon*, 739 F.2d 885, 891 (3d Cir. 1984)).

### B.    Sufficient Evidence of Defendant's Guilt was Presented at Trial

Defendant argues that the evidence presented at trial "was legally insufficient to prove the Defendant's guilt beyond a reasonable doubt and no reasonable trier-of-fact could rationally find otherwise." (Def.'s Mem. of Law in Supp. of Def.'s Post-Trial Motions [hereinafter "Def.'s Mem."] at 2.) According to Defendant, the evidence presented merely established that he was present at 437 Memphis Street four days and twenty-one hours prior to the February 16, 2003 explosion and subsequent discovery of the methamphetamine lab[1] and that he may have known of the lab's existence. (*Id.*) The Government responds that the evidence presented established Defendant's dominion and control over the premises and that he therefore constructively possessed the drugs and other materials found there.   (Gov't's Resp. to Def.'s Mot. for J. of Acquittal or New Trial [hereinafter "Gov't's Resp."] at 6.)

The Government's theory at trial was that Defendant was in constructive possession of the premises and the contents found within.  The key issue upon review is, therefore, whether the Government presented evidence sufficient for a rational jury to find, beyond a reasonable doubt, that Defendant was not merely present at the premises, but was in constructive possession of the illegal substances in question.  To establish constructive possession, the Government must present "sufficient evidence to support an inference that the individual 'knowingly has both the power and

---

[1] This was the last time, according to the Government's forensic computer expert, that there is evidence Defendant sent an email from the computer found on the premises. (Trial Tr. Jan. 14, 2009 at 24, 48, 61-62.)

the intention at a given time to exercise dominion or control over a thing, either directly or through another person or persons.'" *United States v. Brown*, 3 F.3d 673, 680 (3d Cir. 1993) (quoting *Iafelice*, 978 F.2d at 96). Constructive possession requires a showing of both "dominion and control" over an object and that the defendant knew of the object's existence. *Id.* As the jury was properly instructed at trial, "[a] defendant's mere proximity to a controlled substance or mere presence on the property where it is located or mere association with the person who does control the controlled substance or controls the property is not enough to support a finding of possession of that controlled substance." (Trial Tr. Jan. 15, 2009 at 76.); *see also Brown*, 3 F.3d at 680.

Defendant concedes that the evidence at trial proved that he had access to the premises and used the computer located on the second floor to search the internet, visit adult sites, play fantasy sports, and engage in email correspondence. (Def.'s Mem. at 3.) According to the testimony of Government's computer expert, Defendant sent at least 750 emails in the 90 days prior to February 12, 2003, the last date on which an email was sent. (Trial Tr. Jan. 14, 2009 at 31.) Approximately 600 of these contained photographic attachments. (*Id.* at 32.) The Government contends that this testimony regarding extensive computer usage, coupled with other evidence, including the variety of personal documents in Defendant's name that were found at the premises and his prescription bottles of Viagra, provide evidence from which a rational jury could conclude, beyond a reasonable doubt, that Muzychka was frequently present at the site and exercised dominion and control over the premises and objects he knew to be within. (Gov't's Mem. at 7-9.)

In support of this contention, the Government emphasizes witness testimony that, according to the Government, established that Defendant possessed dominion and control over the premises and a vending machine business that at one time operated there. Gerald Lee, a family friend, testified

that he occasionally helped Defendant move vending machines stored at the premises, receiving payment from Defendant in exchange.  (Trial Tr. Jan. 13, 2009 at 261-62.)  This last occurred approximately one or two years prior to the explosion.  (*Id.* at 259-60.)  Lee testified that no other employees of the vending business were present at this time, but that he did not know whether Defendant owned and operated the business.  (*Id.* at 260.)  He presumed, but was not certain, that Defendant had keys to the premises. (*Id.*)  The Government contends that this testimony reveals that Defendant "was the putative owner of the property and principal operator of the formerly thriving family business there, so far as his friends could tell."[2]  (Gov't's Resp. at 14.)

Defendant, however, notes that two of the Government's other witnesses testified Defendant had little or no involvement with the family's vending machine business.  (Def.'s Resp. at 1-2.)  Helen Pisarek, Defendant's sister, who worked in the vending business for three years in the mid-1980s, testified that Defendant was not involved in running the business, but would occasionally help their brother Eugene Muzychka move machines.  (Trial Tr. Jan. 13, 2009 at 105, 115.)  Alex Muzychka, Defendant's brother, testified that, at least between 1981 and 1987, he did not see Defendant at the premises or involved in the daily operation of the business.  (*Id.* at 119.)  However, Alex also testified that he saw Defendant at the premises in the late 1990s, and, although he was not sure what he was doing there, it was not related to the business.  (*Id.* at 120.)  Alex further testified

---

[2] The relevant testimony is more ambiguous than the Government acknowledges.  The Government states that Charles Prem's "testimony suggested that, essentially, Muzychka conducted himself as if he exercised operational control over the family business at the garage and seemed to be in control, sometimes arranging to admit Prem with a key." (Gov't's Resp. at 7.)  In fact, Prem said exactly the opposite, testifying that the business was run by Defendant's brother, that Defendant never paid Prem, and that he never saw Defendant enter the premises with a key. (Trial Tr. Jan. 13, 2009 at 246-47; *see also* Def.'s Mem. of Law in Resp. to Gov't's Post-Trial Memo [hereinafter "Def.'s Resp."] at 2-3.)

that the business "kind of went down the tubes" in the 1990s and he was "not sure if anybody had the business after that." (*Id.* at 125.)

Read in the light most favorable the Government, the testimony and evidence introduced at trial would allow a jury to conclude that Defendant, during the period immediately prior to the explosion, possessed dominion and control over the premises. The evidence clearly indicates that he stored a large array of personal items at the premises and that he was the primary and frequent user of a computer located there. The jury further could have concluded that Defendant had access to the premises and played a role, at least in the years prior to the explosion, in what remained of the vending business. Similarly, the witness testimony and other relevant evidence allowed the jury to infer that the production was underway five days prior to the explosion, when Defendant last sent an email from the computer. (*See* Trial Tr. Jan. 13, 2009 at 25-28; 86; 240-44). Alternatively, the jury could have reasonably inferred that, although Defendant did not send an email in the five days prior to the explosion, he was present at the premises and retained dominion and control. Given the extensive nature of the drug manufacturing operation, found in close proximity to Defendant's personal items and in the upstairs room he frequently utilized, there is clearly evidence to support the conclusion that Defendant had knowledge of the drugs and drug paraphernalia on the premises. With "dominion and control" over the premises and knowledge of the methamphetamine lab's existence, Defendant could be found to be in constructive possession of the drug materials. *C.f. Jackson v. Byrd*, 105 F.3d 145, 150 (3d Cir. 1997) (finding that where lessee of apartment had access to all parts of it, the circumstances "logically tend to support a conclusion that she had constructive possession of the apartment's contents.").

Defendant emphasizes that other individuals had access to the premises. (Def.'s Mem. at 5.)

He relies on the testimony of Alex Muzychka, who stated that a number of individuals had keys and access to the premises. (Trial Tr. Jan. 13, 2009 at 162-69.) However, even if the jury concluded that others did have access, this does not disprove Defendant's constructive possession because, as the Court instructed, Defendant could have maintained joint possession of the premises. (Trial Tr. Jan. 15, 2009 at 76.) The facts in this case offered the jury sufficient evidence from which to conclude, beyond a reasonable doubt, that Defendant expressed dominion and control and was in constructive possession of the premises and its contents.

### C.     This Case is Distinguishable From Those Relied Upon by Defendant

Defendant relies on two cases in which the Third Circuit found the evidence presented at trial legally insufficient to support a conviction based on constructive possession. In *United States v. Brown*, the government offered circumstantial evidence to establish that the defendant had constructive possession of drugs found in a residence. This evidence included: 1) the defendant possessed a key to the house; 2) she arrived at the house during the search and attempted to enter it using her key; 3) the defendant admitted that a pair of woman's shorts, with a switchblade in the pocket, that were found in a room of the house in which no drugs were found, belonged to her; and 4) the defendant, after admitting the switchblade belonged to her, told the police that they could not arrest her, because she was in her own house. 3 F.3d at 680. The police found heroin, crack, and cocaine powder, as well as drug packaging materials, throughout the kitchen and an upstairs bedroom. *Id.* at 675. Defendant, in challenging the sufficiency of the evidence, relied on facts including: her fingerprints were not found on any of the drugs or drug paraphernalia, her possessions were in a room in which no drugs were found, and the deed to the house made it clear that her co-defendant was the sole owner of the house. *Id.* at 681. The appellate court concluded that the

evidence presented was sufficient to show that the defendant resided in this "cut house" and knew drugs were in the house, but not sufficient "to support a finding that she exercised dominion and control over the drugs." *Id.* It emphasized that the drugs were found in particular rooms of a multi-room home, contrasting the situation with cases involving the discovery of drugs in a vehicle. *Id.* at 683.

This case is readily distinguishable from *Brown*. The Government did not merely provide evidence that Defendant resided in a multi-room house where drugs were prepared, but rather evidence indicating that he was, in the period immediately prior to the explosion, the primary user of a small building in which extensive drug manufacturing occurred. Unlike *Brown*, Defendant's possessions, including personal documents and a computer he used extensively, were found in immediate proximity to the drug-related materials. Also unlike *Brown*, witnesses offered testimony from which a reasonable jury could infer that Defendant exercised dominion and control over the premises, as evidenced by his movement of vending machines into and out of the garage. Moreover, although a deed identified Olga Muzychka, Defendant's mother, as the property's owner, the Defendant's sister Helen Pisarek testified that Olga was not aware that the property had been put in her name nor that she owned it. (Trial Tr. Jan. 13, 2009 at 113.) In fact, Helen had no memory of her mother visiting the premises. (*Id.*) Indeed, the parties stipulated that Olga first learned in early 2008 that she owned the property and that she had not visited the premises in approximately twenty years. (*Id.* at 115-16.) Accordingly, the deed does not prevent a jury's reasonable conclusion that Defendant exercised dominion and control of the premises, as the deed in *Brown* may have.

*United States v. Jenkins*, which Defendant also relies upon, is also distinguishable. 90 F.3d 814 (3d Cir. 1996). In *Jenkins* the Third Circuit declared that the government had failed to provide

sufficient evidence to establish constructive possession of cocaine powder. The evidence at trial showed that the defendant was found seated with another individual on a couch in the living room of an apartment. *Id.* at 816. Both were attired in boxer shorts and t-shirts. *Id.* The coffee table before them was adorned with bags containing cocaine and non-cocaine white powder, two scales, two hand guns, small bags, vials and red caps. *Id.* A loaded sawed-off shotgun lay beside them on the floor. *Id.* However, "there was no evidence that either man had been working with cocaine." *Id.* No "cutting" implements were found anywhere in the apartment, nor was drug residue found on either individual.

The defendant was convicted of possession with intent to distribute, as well as use of a firearm in connection with a drug trafficking crime. *Id.* at 817. The district court denied a post-trial motion to acquit, concluding that there were three factors from which a jury reasonably could infer dominion and control: 1) Jenkins's close proximity to the drugs; 2) although no evidence showed Jenkins was a resident of the apartment, he was there at 1:30 a.m. in boxers and a t-shirt, showing he either planned to stay the night or had been there for some time; and 3) two scales were on the table, suggesting each of the individuals on the couch planned to use one. *Id.* The Third Circuit disagreed, relying on *Brown* and cases from other circuits to conclude that, to support a finding of constructive possession, "[s]ome additional evidence of dominion and control is required," as "proximity alone is not enough, no matter how near that proximity is." *Id.* at 820. Two scales, a t-shirt, and boxer shorts did not provide sufficient additional evidence. *Id.* Here, however, the evidence is substantially stronger: numerous personal documents and effects, extensive and prolonged use of the computer, and testimony that Defendant exercised some control over machines stored on the premises. Moreover, contrary to Defendant's assertion otherwise, the evidence at trial

10

*does* indicate that, in the years immediately prior to the explosion, Defendant had a much stronger "familial connection" to the property than other family members.  (*See* Def.'s Mot. at 15.) Defendant, unlike the defendant in *Jenkins*, was not merely a partially undressed guest who happened to stay late. *See* 90 F.3d at 820 (state of undress does not allow reasonable jury to conclude beyond a reasonable doubt that defendant had dominion and control over drugs and intended to participate in distribution).  Sufficient evidence exists to sustain Defendant's conviction.

## III.   DEFENDANT'S RULE 33 MOTION FOR A NEW TRIAL

### A.    Standard of Review

Defendant contends that the Court, by allowing certain testimony from Forensic Chemist Michelle Camilleri, denied Defendant due process of law and a fair trial.  (Def.'s Mem. at 16.)  As such, Defendant argues that he is entitled to a new trial, pursuant to Federal Rule of Criminal Procedure 33, which states that "[u]pon defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." FED. R. CRIM. P. 33.  "Unlike an insufficiency of the evidence claim, when a district court evaluates a Rule 33 motion it does not view the evidence favorably to the Government, but instead exercises its own judgment in assessing the Government's case." *United States v. Johnson*, 302 F.3d 139, 150 (3d Cir. 2002).  Although this standard is broader than the standard for acquittal under Rule 29, motions for a new trial are disfavored and "only granted with great caution and at the discretion of the trial court." *United States v. Martinez*, 69 F. App'x 513, 516 (3d Cir. 2003).

### B.    Defendant is Not Entitled to a New Trial

According to Defendant, this Court erred by allowing Camilleri to "opine[] on how long she

11

believed it took to manufacture the methamphetamine found at 437 Memphis Street." (Def.'s Mem. at 16.)  This testimony, Defendant argues, contravened the Court's determination that the expert could not testify as to how long the lab had been in operation. (*Id.* (citing Trial Tr. Jan. 3, 2009 at 153).)  At trial, the Court ruled that the Government could "ask [the expert] how long it takes to prepare that kind of methamphetamine in that quantity." (Trial Tr. Jan. 13, 2009 at 153).  The Government was not permitted to ask how long the particular lab at the premises was in operation. (*Id.*)

Defendant, although he did not object to the actual testimony at trial, now contends that the expert's testimony exceeded the Court's limiting instruction.  The Government followed this instruction by asking the expert "how long would it take to prepare the methamphetamine that you are aware was present in this operation?" (*Id.* at 240.)  At no point did the expert testify as to how long the lab at the premises had been in operation.  Her testimony focused instead on the length of time necessary to produce the quantity of methamphetamine recovered at the premises, in light of certain variables already admitted into evidence, including the video tour of the premises. (*Id.*)  As such, the testimony did not exceed the limiting instruction, and no error occurred.[3]

Defendant also offers a separate objection, contending that the Government failed to provide proper pre-trial notice that a forensic chemist would be called to testify about how long, prior to the

---

[3] Additionally, "[f]ailure to object at trial, absent plain error, constitutes a waiver of the issue for post-trial purposes." *United States v. Tiller*, 302 F.3d 98, 105 (3d Cir. 2002).  The exception to the contemporaneous-objection rule, for situations involving plain error, "is to be 'used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result.'" *United States v. Young*, 470 U.S. 1, 15 (1985) (quoting *United States v. Frady*, 456 U.S. 152, 163 n.14 (1982)).  Because the Court finds no error occurred in relation to the limiting instruction and subsequent testimony, Defendant cannot show plain error and an exception to the contemporaneous-objection rule.

February 16, 2003 explosion, the methamphetamine lab had been in operation. (Def.'s Mem. at 17.) As already discussed, the Court does not agree that the expert testified as to the specific period of time the lab had been in operation, but rather opined regarding the time necessary to produce the quantity of methamphetamine recovered.   Furthermore, the expert summary provided by the Government, pursuant to Federal Rule of Criminal Procedure 16, stated that Camileri would "provide testimony in the area of clandestine laboratories" and that "she is very familiar with the *processes* to produce methamphetamine from the raw materials through the finished product, and how the ingredients are cooked and mixed to bring about the transformation to ingestible methamphetamine." (Def.'s Mem. Ex. D [Camilleri Summary] (emphasis added.) It is reasonable to conclude that examination of an expert regarding the process of producing methamphetamine would include questions dealing with the length of time it takes to produce this drug. As such, the trial testimony fit within the scope of the expert summary, which provided Defendant adequate pre-trial notice.

Moreover, there is no indication that Defendant was prejudiced by this testimony. *See United States v. Smith*, 140 F. App'x 349, 351 (3d Cir. 2005) (holding, in context of appeal, that defendant must show "both that the government violated Rule 16 and that the violation was prejudicial"). Another witness testified as to how long it would take to produce the methamphetamine found at the premises. Special Agent Turner testified that he estimated, based on the evidence found at the lab, that it would have taken several days and that the evidence showed "that there were several batches of meth that had been made throughout a period of time from that lab." (Trial Tr. Jan. 13, 2009 at 25.)  In addition, the jury saw numerous exhibits, including a video walk through, which revealed the size of the operation, from which they could have drawn independent conclusions regarding the

length of time the operation had been in place.  For these reasons, the Court does not agree that Defendant was denied a fair trial and therefore denies his request for a new trial.

## IV.   CONCLUSION

Viewed in a light most favorable to the Government, the Court finds that the evidence presented at trial was sufficient for a rational jury to find Defendant guilty beyond a reasonable doubt.  The testimony of Michelle Camilleri did not deny Defendant a fair trial.  Accordingly, Defendant's motions for acquittal and for a new trial are denied and the jury's verdict is upheld.  An appropriate Order will be docketed with this opinion.